IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAMIR LATIF, | * | |
|     Plaintiff, | * | |
| v. | * | Civil Action No. RDB 05-2648 |
| THE COMMUNITY COLLEGE OF BALTIMORE COUNTY, *et al.*, | * | |
| | * | |
|     Defendants. | | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM OPINION**

Plaintiff Samir Latif ("Latif" or "Plaintiff") has filed a Second Amended Complaint in this action against Defendants Community College of Baltimore County ("CCBC"), and Irving McPhail, Andrew Jones, James Klein, Roderick Pullen, and Jeffrey C. Hahn (collectively, the "Individual Defendants"). The Second Amended Complaint asserts numerous causes of action, including violations of 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and several state tort claims. This Court has jurisdiction under 28 U.S.C. § 1331. The parties' submissions have been reviewed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2004).

Currently pending before this Court is Defendants' Motion to Dismiss certain causes of action for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For reasons stated below, Defendants' motion is GRANTED-IN-PART and DENIED-IN-PART. As a result, only the following causes of action will proceed to the next stage of this litigation: Plaintiff's Title VII claims against CCBC (Counts One and Two); Plaintiff's § 1981 claims for injunctive relief against the Individual Defendants in their

official capacities (Counts One and Two); and Plaintiff's §§ 1981 and 1983 claims for monetary relief against the Individual Defendants in their individual capacities (Counts One and Two).[1] Plaintiff's other causes of action are dismissed, including Counts Three, Four, Five, and Six, which are dismissed in their entirety.

## BACKGROUND

The facts are viewed in the light most favorable to the plaintiff. Plaintiff is a United States Citizen and was born in the Middle East. (Sec. Am. Compl. ¶ 2.) This case arises out of Plaintiff's employment as an English Assistant Professor at CCBC's Catonsville Campus. In February and March of 2003, Plaintiff experienced problems with two CCBC students, one of whom allegedly told Latif that he "should be deported" and that he "looked like a terrorist." (*Id*. at ¶ 9, 12.) During this period, Plaintiff also received several death threats. (*Id*. at ¶ 10, 15, 21.) Latif reported the harassing behavior and threats to James Klein ("Klein"), the Assistant Director of Public Safety. Irving McPhail ("McPhail"), the Chancellor of CCBC, and Andrew Jones ("Jones"), the President of the Catonsville Campus, were also notified of the death threats.

In November 2004, Plaintiff received an email sent to the campus listserve that classified Middle Easterners as "hateful." (Sec. Am. Compl. ¶ 29.) Latif sent an email to McPhail expressing his dismay over the email. Later that month, CCBC students and employees found copies of a handout that classified Latif as a Middle Easterner and dangerous and warning people that they should "kill him before he kills you." (*Id*. at ¶ 33.) The handouts were reported to the

---

[1] Defendants did not move to dismiss all claims in the Second Amended Complaint. For example, Defendants' motion does not address Plaintiff's Title VII claims against CCBC (Counts One and Two) or Plaintiff's § 1981 and § 1983 claims against Defendants James Klein, Roderick Pullen, and Jeffrey Hahn in their individual capacities (Counts One and Two).

Office of Public Safety and the Baltimore County Police.

In December 2004, Plaintiff filed a complaint in the CCBC Office of Human Resources, Institutional Equity and Labor Relations ("Human Resources") against McPhail for failing to take action to achieve an environment free of hate and death threats based on race and nationality. (Sec. Am. Compl. ¶ 34.) Latif sent emails to Jeffrey Hahn ("Hahn"), Executive Director of Human Resources, expressing his desire for a timely investigation into his complaint, and stating that he feared for his safety. (*Id*. at ¶ 36.) In January 2005, Latif sent another email to Hahn, in which he copied McPhail and Roderick Pullen ("Pullen"), Director of Public Safety, stating that he and his witnesses had been intimidated and insulted. (*Id*. at ¶ 37.) In February 2005, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Human Relations.

In response to Plaintiff's EEOC charges, Hahn arranged a meeting with Latif on March 9, 2005. At that meeting, Klein, Pullen, and Hahn took Latif to the basement of a CCBC building where Hahn allegedly told Latif he had to resign because he "got the college in trouble by filing the complaint with EEOC." (Sec. Am. Compl. ¶ 43.) Plaintiff also alleges that Klein and Pullen grabbed him, did not permit him to leave the room, kicked him in the leg, pushed him to the floor, scratched him, and forced him to look at pornographic images on a computer. (*Id*. at ¶ 47-52.) During this meeting, Pullen allegedly told Plaintiff that "we have emails that connect you with terrorist [sic] and you had better resign." (*Id*. at ¶ 55.) Latif refused to resign. After the meeting, Latif received a termination letter signed by McPhail, stating that Latif was being terminated as a result of the investigation initiated at Latif's request. (*Id*. at ¶ 58.)

On September 23, 2005, Plaintiff filed a Complaint against CCBC and the Individual

-3-

Defendants. On January 27, 2006, Plaintiff filed an Amended Complaint. On April 19, 2006, Plaintiff filed a Second Amended Complaint. On April 28, 2006, Defendants filed a Motion to Dismiss.[2]

### **STANDARD OF REVIEW**

CCBC and the Individual Defendants seek to dismiss certain causes of action asserted by Plaintiff pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). The "Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Rather, Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325-26 (4th Cir. 2001); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)). Therefore, a Rule 12(b)(6) motion to dismiss "should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001); *see also Venkatraman v. REI Sys., Inc.*,

---

[2] On November 22, 2006, this Court granted the parties' joint motion for modification of the scheduling order. As a result, this Court set March 1, 2007 as the discovery deadline and ordered that dispositive motions be filed on or before March 30, 2007. (*See* Paper No. 35.)

417 F.3d 418, 420 (4th Cir. 2005).

# DISCUSSION

## I.     Plaintiff's Complaint.

Plaintiff's Second Amended Complaint contains six counts.  As the following chart illustrates, each count contains numerous causes of action:

| Count | Causes of Action |
|---|---|
| I | <u>Hostile Work Environment Claims</u>:  Plaintiff contends that CCBC and the Individual Defendants failed to alleviate harassment rising to the level of a hostile work environment due to his national origin in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII.  (Sec. Am. Compl. ¶¶ 66-82.) |
| II | <u>Retaliation Claims</u>:  Plaintiff asserts that CCBC and the Individual Defendants retaliated against him for filing a complaint with the EEOC in violation of 42 U.S.C. § 1981, 42 U.S.C. § 1983, and Title VII.  (*Id*. at ¶¶ 83-87.) |
| III | <u>Assault and Battery</u>: Plaintiff asserts a claim for assault and battery against CCBC and Defendants Klein and Pullen.  (*Id*. at ¶¶ 88-94.) |
| IV | <u>Wrongful Imprisonment</u>: Plaintiff asserts a claim for wrongful imprisonment against CCBC and Defendants Hahn, Klein, and Pullen.  (*Id*. at ¶¶ 95-98.) |
| V | <u>Intentional Infliction of Emotional Distress</u>: Plaintiff asserts a claim for intentional infliction of emotional distress against CCBC and Defendants Hahn, Klein, and Pullen.  (*Id*. at ¶¶ 99-101.) |
| VI | <u>Conspiracy to Violate Civil Rights</u>: Plaintiff contends that the Individual Defendants engaged in a conspiracy to interfere with his civil rights in violation of 42 U.S.C. § 1985. (*Id*. at ¶¶ 102-103.) |

Plaintiff provides that the Individual Defendants are sued in their "official capacities *and* in their personal capacities as individuals."  (Sec. Am. Compl. ¶ 63 (emphasis added).)  Finally, based on all of the causes of action asserted in the Second Amended Complaint, Plaintiff requests compensatory and punitive damages in the amount of $20 million and the "develop[ment] [of] a plan or procedure to prevent the reoccurrence of similar events."  (*Id.* at ¶ 104.)

**II.     Title VII Claims Against Individual Defendants; Section 1983 Claims Against CCBC and the Individual Defendants; Tort Claims Against CCBC**.

Defendants argue that Plaintiff's causes of action under Title VII against the Individual Defendants as set forth in Counts One and Two should be dismissed because the law does not impose personal liability on individual supervisors or administrators.  *See, e.g.*, *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998).  Defendants also argue that Latif's causes of action under 42 U.S.C. § 1983 against CCBC and the Individual Defendants in their official capacities as set forth in Counts One and Two should be dismissed because neither CCBC nor the Individual Defendants acting in their official capacities meet the statute's definition of  "persons" who may be sued under the law.[3]  *See, e.g.*, *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).  Finally, Defendants argue that Plaintiff's state tort claims against CCBC as set forth in Counts Three, Four, and Five should be dismissed because CCBC, as a state agency, is afforded the protections of sovereign immunity.  *See, e.g.*, *Board of Trustees of Howard Community College v. John K. Ruff, Inc.*, 366 A.2d 360, 364 (Md. 1976).

Plaintiff does not oppose dismissal of these claims.  (*See* Resp. Mot. Dismiss at 1-2.) Accordingly, Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's Title VII claims against the Individual Defendants (Counts One and Two), Plaintiff's § 1983 claims

---

[3]     42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . .

against CCBC and the Individual Defendants in their official capacities (Counts One and Two), and Plaintiff's state tort claims against CCBC (Counts Three, Four and Five).

### III.     Section 1981 Claims Against CCBC.

Defendants contend that Plaintiff's claims for hostile work environment and retaliation against CCBC pursuant to 42 U.S.C. § 1981 in Counts One and Two of the Second Amended Complaint are barred by the Eleventh Amendment to the United States Constitution.[4]

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."[5]

---

[4]     42 U.S.C. § 1981 provides in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[5]     Congress has the power to abrogate Eleventh Amendment immunity through the enactment of legislation. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 452-56 (1976). However, Congress has not taken such action for § 1981 claims. *See Freeman v. Michigan Dept. of State*, 808 F.2d 1174, 1178-79 (6th Cir.1987) (finding that Eleventh Amendment bars § 1981 action against a state because Congress did not intend to establish state liability when it enacted § 1981); *Petterway v. Veterans Admin. Hosp., Houston, Tex.*, 495 F.2d 1223, 1225 n.3 (5th Cir. 1974) ("Section 1981 contains no explicit waiver of sovereign immunity by the federal government but merely a general prohibition of discrimination on racial grounds."); *Herron v. Virginia Com. University*, 366 F. Supp. 2d 355, 363-64 (E.D. Va. 2004) ("Congress has not abrogated Eleventh Amendment immunity in regard to claims brought pursuant to 42 U.S.C. §§ 1981 and 1983."). In addition, the Eleventh Amendment does not bar suit in federal court where the State has explicitly consented to be sued. *Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 238 (1985). In this case, there is no suggestion that the State of Maryland has waived its immunity from suit in federal court.

U.S. CONST. amend. XI. The Supreme Court has held that this Amendment prevents citizens from bringing suit against their own States in federal court. *Atascadero*, 473 U.S. at 238 (citing *Hans v. Louisiana,* 134 U.S. 1 (1890)). This jurisdictional bar applies to suits for monetary and injunctive relief. *See Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 58 (1996) ("[W]e have often made it clear that the relief sought by plaintiff suing a State is irrelevant to the question of whether suit is barred by the Eleventh Amendment.").

State-run universities are an arm of the State for purposes of Eleventh Amendment immunity. *See Middlebrooks v. Univ. of Maryland*, 980 F. Supp. 824, 827 (D. Md. 1997) (acknowledging that the Eleventh Amendment's prohibition on federal jurisdiction over a citizen's claims against his or her state extends to suits against the University of Maryland); *Roberson v. Bowie State Univ.*, 899 F. Supp. 235, 237 (D. Md. 1995) (noting that the Eleventh Amendment bars claims against Bowie State University); *Board of Trustees of Howard Community College v. John K. Ruff, Inc.*, 366 A.2d 360, 364 (Md. 1976) (holding that a community college's Board of Trustees is an agency of the State for the purpose of sovereign immunity). Plaintiff does not dispute that CCBC is a university that is run by the State of Maryland. Accordingly, Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's § 1981 claims against CCBC (Counts One and Two).

**IV.    Section 1981 Claims Against Individual Defendants in Their Official Capacities**.

    **A.    Monetary Damages**.

The Individual Defendants request that this Court dismiss Plaintiff's claims for monetary damages pursuant to 42 U.S.C. § 1981 in Counts One and Two on grounds that the Eleventh Amendment bars such claims against government employees acting in their official capacities.

The Eleventh Amendment bar applies "when State officials are sued for damages in their official capacities." *Kentucky v. Graham,* 473 U.S. 159, 169 (1985) (internal citations omitted). That bar precludes claims for retroactive damages, including monetary damages, but does not extend to prospective, injunctive relief. *See Green v. Mansour,* 474 U.S. 64, 68 (1985) (emphasizing that injunctive remedies "designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law"); *Edelman v. Jordan,* 415 U.S. 651, 666-67 (1974) ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury."); *Roberson*, 899 F. Supp. at 237 (noting that the Eleventh Amendment bars claims for damages against a State university's officers or employees acting in their official capacities).

There is no dispute in this case that Plaintiff seeks monetary damages in connection with his § 1981 claims against the Individual Defendants in their official capacities (Counts One and Two). Such claims are barred by the Eleventh Amendment. Accordingly, Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's § 1981 claims for monetary damages against the Individual Defendants in their official capacities (Counts One and Two).

### B.     Injunctive Relief.

Defendants McPhail and Jones request that this Court dismiss Latif's § 1981 claims for injunctive relief in Counts One and Two against them because they are no longer associated with CCBC and thus are unable to implement the injunctive relief.[6]

---

[6] The Eleventh Amendment does not bar Plaintiff's § 1981 claims for injunctive relief against the Individual Defendants acting in their official capacities. *See Green,* 474 U.S. at 68; *Edelman,* 415 U.S. at 666-67. Latif's request for relief from the Individual Defendants,

Rule 25(d)(1) of the Federal Rules of Civil Procedure provides:

> When a public officer is a party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party. Proceedings following the substitution shall be in the name of the substituted party, but any misnomer not affecting the substantial rights of the parties shall be disregarded. An order of substitution may be entered at any time, but the omission to enter such an order shall not affect the substitution.

Fed. R. Civ. P. 25(d)(1); *see also Lankford v. Gelston*, 364 F.2d 197, 205 n.9 (4th Cir. 1966) (noting that an injunction would bind all future police commissioners regardless of whether the name of the present incumbent is substituted). Substitution generally does not affect the outcome of the litigation because the concern is not with the person who happens to hold the office at a particular time, but with the office itself. *Lankford*, 364 F.2d at 205 n.9. The provisions of Rule 25(d) apply to federal and state officers. *See* 7C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1960 (2d ed. 1986) (collecting cases). As a result, the departure of McPhail and Jones from CCBC does not abate Latif's § 1981 claims for injunctive relief. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Plaintiff's claims for injunctive relief against the Chancellor of CCBC and the President of the CCBC Catonsville Campus (Counts One and Two).[7]

Defendants Hahn, Pullen, and Klein also request that this Court dismiss Latif's § 1981 claims for injunctive relief in Counts One and Two against them because they do not have the

---

acting in their official capacities, includes that they "develop a plan or procedure to prevent the reoccurrence of similar events." (Sec. Am. Compl. ¶ 104.)

[7] As noted above, Rule 25(d)(1) requires that "[p]roceedings following the substitution shall be in the name of the substituted party. . . ." Accordingly, the parties should submit an order of substitution to ensure that future proceedings comply with Rule 25(d)(1).

authority to implement the requested relief. However, Defendants' Motion to Dismiss provides no support for the conclusion that these individuals lack authority to implement the requested injunctive relief. (*See* Defs.' Mot. Dismiss at 6 (providing that "[t]he other Individual Defendants (the director of human resources and two security officers from one of the CCBC campuses) do not have the authority to implement the relief requested.").) As a result, this Court is not prepared to conclude at this time that Hahn, Pullen, and Klein have no such authority. Accordingly, Defendants' Motion to Dismiss is DENIED with respect to Plaintiff's claims for injunctive relief against Hahn, Pullen, and Klein in their official capacities (Counts One and Two).

**V.     Section 1981 and 1983 Claims Against Defendants McPhail and Jones in Their Individual Capacities.**

Defendants contend that Plaintiff's claims under 42 U.S.C. §§ 1981 & 1983 against Defendants McPhail and Jones in their individual capacities should be dismissed for the following reason:

> [T]o the extent Counts I and II allege claims against the Individual Defendants in their personal rather than official capacities, the Second Amended Complaint is devoid of factual allegations that McPhail and Jones were personally involved in any intentional discrimination or violation of Plaintiff's rights.

(Defs.' Mot. Dismiss at 7.) As noted above, Count One of the Second Amended Complaint alleges harassment rising to the level of a hostile work environment in violation of 42 U.S.C. §§ 1981 & 1983, while Count Two alleges retaliation for participation in EEOC activity in violation of the same statutes. Defendant McPhail was the Chancellor of CCBC. Defendant Jones was the President of the Catonsville campus.

-11-

Plaintiff responds with two arguments.  First, Plaintiff contends that the Second Amended Complaint alleges facts to support his § 1981 and § 1983 claims against Defendants McPhail and Jones.  Specifically, Plaintiff notes that paragraphs 23 and 25 allege that McPhail and Jones were notified of a death threat that was made against the Plaintiff and that "nothing was done" in response to this threat.  (*See* Pl.'s Opp. Mot. Dismiss at 2; Sec. Am. Compl.  23 & 25.)  Plaintiff also points out that paragraphs 77-79 of the Second Amended Complaint "allege facts in support of the claims against Mr. McPhail."  (Pl.'s Opp. Mot. Dismiss at 2 n.1.)  Paragraphs 77-79 allege that McPhail knew about the allegedly hostile work environment, possessed authority over CCBC students and the other Individual Defendants, and "tolerated and condoned the actions of the students and the other Co-Defendants."  (Sec. Am. Compl.  79.)

Second, Plaintiff maintains that evidence produced during discovery lends further support to his § 1981 and § 1983 claims against McPhail and Jones.  Plaintiff emphasizes his deposition testimony that he told Jones about a man trying to sell him a gun on campus and that, in response, Jones "kept laughing, for no reason, and he didn't stop."  (Latif Dep. p. 198, ll. 4-6; *see also* Pl.'s Opp. Mot. Dismiss at 2.)  Plaintiff's testimony also provides that:

> One time [McPhail] attended a meeting in some time in 2004 and I complained about the attitude of students and their intimidation to me in a public meeting.  And guess what his answer was, in front of 50 professors?  He said that I can deal with them.  I am 6'6".  I am that amount of weight.  I can deal with those students.  And he didn't even direct his answer to me.

(Latif Dep. p. 229, l. 20 - p. 230, l. 7; *see also* Pl.'s Opp. Mot. Dismiss at 2.)

Defendants acknowledge that if this Court were to consider the deposition testimony identified by Plaintiff, then Defendants' motion to dismiss must be treated as one for summary

judgment.  (*See* Defs.' Reply pp. 1-2); *see also* Fed. R. Civ. P. 12(b)(6).  However, Defendants request that this Court *not* convert Defendants' motion and instead "exercise its discretion to exclude the submissions extraneous to the pleadings and to treat the motion as one under Rule 12(b)(6), as the Defendants intended."  (Defs.' Reply p. 2.)  Defendants do not otherwise respond to the matters outside the pleadings emphasized by Plaintiff in his opposition papers.

After considering the parties' papers, this Court will neither grant Defendants' Motion to Dismiss Plaintiff's § 1981 and § 1983 claims against McPhail and Jones in their individual capacities nor treat this motion as one for summary judgment.  In this case, the Second Amended Complaint and Defendants' Motion to Dismiss were filed *after* discovery had commenced.[8]  As a result, Defendants were aware of the (at least partially developed) factual record relating to the claims at issue when Plaintiff filed its Second Amended Complaint and before Defendants filed their Motion to Dismiss.  Moreover, unlike most of the other causes of action challenged by the pending motion, Defendant does not argue that Plaintiff's § 1981 and § 1983 claims against McPhail and Jones in their individual capacities should be dismissed because of the lack of a cognizable legal theory.  Instead, Defendant moves to dismiss these claims solely on grounds that Plaintiff failed to allege sufficient facts in the Second Amended Complaint.

Defendants could have, but did not, respond to Plaintiff's opposition papers by arguing that there is no genuine issue as to any material fact with respect to the § 1981 and § 1983 claims against McPhail and Jones in their individual capacities.  Had Defendants made such an argument, this Court might have resolved this particular dispute under Rule 56 of the Federal

---

[8] The depositions noted by Plaintiff in his opposition papers were taken on March 22 & 28, 2006.  (*See* Pl.'s Opp. p. 2.)  Plaintiff's Second Amended Complaint was filed on April 19, 2006.  Defendants' Motion to Dismiss was filed on April 28, 2006.

Rules of Civil Procedure. However, in light of the unique procedural context of this case and the fact-intensive nature of these claims, this Court will neither grant Defendants' Motion to Dismiss nor convert that motion to one for summary judgment. *See Presley*, 464 F.3d at 483 ("The purpose of Rule 12(b)(6) is to test the legal sufficiency of a complaint" and not to "resolve contests surrounding the facts [or] the merits of a claim. . . .") (citation omitted). The parties do not discuss in sufficient detail the factual record that clearly existed when the Second Amended Complaint was filed. Defendants have specifically requested, moreover, that this Court not treat their motion as one for summary judgment. As a result, these claims may be addressed in further detail by Defendants during the next stage of this litigation, *i.e.*, the filing of dispositive motions. Accordingly, Defendants' Motion to Dismiss Plaintiff's § 1981 and § 1983 claims against McPhail and Jones in their individual capacities is DENIED.[9]

## VI. Assault and Battery, Wrongful Imprisonment, Intentional Infliction of Emotional Distress.

Hahn, Klein, and Pullen contend that Plaintiff cannot maintain his state law tort claims against them because of his failure to comply with the mandatory notice provision of the Local Government Tort Claims Act, Md.Code Ann., Cts. & Jud. Proc. §§ 5-301-5-304 (the "LGTCA").

---

[9] Analyzing these claims is a potentially complex matter that will require identifying the precise constitutional or statutory rights at issue, and may also involve issues of qualified immunity. *Cf. Beardsley v. Webb*, 30 F.3d 524, 529 (4th Cir. 1994) (applying Title VII standard to hostile work environment claims under § 1983); *Bass v. E.I. DuPont De Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (setting forth elements of a *prima facie* claim for hostile work environment under Title VII); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements of a claim for supervisory liability under § 1983); *Jennings v. Univ. of N. Car. at Chapel Hill*, 240 F. Supp. 2d 492, 504-509 (M.D.N.C. 2002) (discussing qualified immunity in the context of supervisory liability and sexual discrimination claims against a university official); *Tillman v. Wheaton-Haven Recreation Ass'n, Inc.*, 517 F.2d 1141, 1146 (4th Cir. 1975) (discussing individual liability under § 1981).

Under the LGTCA, a party may not bring an action for unliquidated damages against a local government or its employees unless the party provides written notice of the claim to the proper authorities within 180 days after the injury. Md. Code Ann., Cts. & Jud. Proc. § 5-304(b). The statute's definition of "local government" includes a community college such as CCBC. *Id.* at § 5-301(d)(9) (extending coverage to "[a] community college. . . ."). The statute requires that in Baltimore County, "notice shall be given in person or by certified mail . . . by the claimant or the representative of the claimant, to the county solicitor or the county attorney." *Id.* at § 5-304(c)(2). Maryland courts have consistently held that the LGTCA's notice requirement is a condition precedent to the right to maintain an action for damages, *Grubbs v. Prince George's County*, 297 A.2d 754, 755-56 (Md. 1972), and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action. *Madore v. Baltimore County*, 367 A.2d 54, 56 (Md. 1976).

In this case, there is no dispute that Plaintiff did not strictly comply with the LGTCA's notice requirements. (*See* Pl.'s Opp. Mot. to Dismiss at 3.) Moreover, Plaintiff does specifically contend that he substantially complied with those requirements.[10] Instead, Plaintiff argues that

---

[10] Maryland courts have recognized that "substantial compliance with the statutory requirements may nevertheless satisfy the statute where the purpose of the notice requirement is fulfilled." *Moore v. Norouzi*, 807 A.2d 632, 641 (Md. 2002); *see also White v. Prince George's County*, 877 A.2d 1129, 1138-40 (Md. Ct. Spec. App. 2005) (describing substantial compliance standard). As already noted, Plaintiff does not specifically argue that he substantially complied with the LGTCA's notice requirements. In addition, the facts alleged by Plaintiff in connection with this matter do not satisfy the standard for substantial compliance. *Cf. Norouzi*, 807 A.2d at 643 ("There must be some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision); *Bibum v. Prince George's County*, 85 F. Supp. 2d 557, 565 (D. Md. 2000) (concluding that plaintiff who brought suit against local police officer failed to substantially comply with LGTCA, where statute required notice be sent to the county attorney and plaintiff sent notice of his complaint to police internal affairs department); *accord White v. Prince George's County*, 877 A.2d at 1138-40.

-15-

this case falls with the LGTCA's exception to the notice requirement.[11]  Section 5-304(c) of the LGTCA provides that "unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given."  Md. Code Ann., Cts. & Jud. Proc. § 5-304(c).  The Maryland legislature did not define what constitutes good cause.  Instead, it committed that determination to the discretion of the court.  *Madore v. Baltimore County*, 367 A.2d 54, 57 (Md. 1976).  "The test for [the] existence [of good cause] is that of ordinary prudence, that is, whether the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances."  *Moore v. Norouzi*, 807 A.2d 632, 641 (Md. 2002) (citations omitted).  Ignorance of the statutory requirements, however, does not constitute good cause.  *See Williams v. Montgomery County*, 716 A.2d 1100, 1107 (Md. Ct. Spec. App. 1998), *cert. granted*, 721 A.2d 989 (Md. 1998); *Olshonsky v. Maryland Nat'l Capital Park & Planning Comm'n*, No. 95-1331, 1995 WL 479845, at *4 (4th Cir. Aug. 15, 1995) (unpublished).

In this case, Plaintiff fails to establish good cause for failing to comply with the notice requirements of the LGTCA.  Plaintiff simply offers no explanation for his failure to comply with those requirements, which is noteworthy given that Plaintiff was represented by an attorney during the relevant time period. (*See* Pl.'s Opp. Mot. to Dismiss at Ex. 4.)  Indeed, Plaintiff's opposition papers do nothing more than describe the facts leading up to the filing of this lawsuit.

---

[11]  (*See* Pl.'s Opp. Mot. to Dismiss at 3 ("Defendants cannot affirmatively show that its defense has been prejudiced, the Second Amended Complaint alleges timely notice of the facts and circumstances giving rise to the claim, and because there exist good cause for failure to comply with the statute.") (citing § 5-304(c) of the LGTCA).)

(*See id*. at 4 ("[A] certified letter was sent to the Chairman of the Board of Trustees of CCBC on May 18, 2005 . . . On May 24, 2005, General Counsel for CCBC wrote Plaintiff's counsel . . . On June 7, 2005, the Plaintiff provided CCBC with a release. . . .").) Based on this showing, this Court concludes that good cause does not exist for waiving the LGTCA's notice requirement in this case.[12]

In sum, Plaintiff does not dispute that he neither complied nor substantially complied with the LGTCA's notice requirements. Moreover, Plaintiff has not shown good cause for waiving the notice requirements. As a result, this Court concludes that Plaintiff's failure to comply with the notice requirements of the LGTCA bars his claims of assault and battery, wrongful imprisonment, and intentional infliction of emotional distress against Hahn, Klein, and Pullen. Accordingly, Defendants' Motion to Dismiss Counts Three, Four, and Five of the Second Amended Complaint is GRANTED.

**VII.   Section 1985 Claims of Conspiracy Against the Individual Defendants**.

The Individual Defendants request that this Court dismiss Plaintiff's conspiracy claim pursuant to 42 U.S.C. § 1985 on grounds that the Second Amended Complaint fails to allege sufficient facts in connection with this claim. Plaintiff responds that the Second Amended Complaint is sufficient because it alleges that the Individual Defendants "conspired" and "agreed" to engage in harassing behavior.

Under § 1985, two or more persons may not "conspire . . . for the purpose of depriving,

---

[12] Plaintiff suggests that this Court should waive the notice requirement because Defendants Hahn, Klein, and Pullen are not prejudiced by the lack of notice. However, a defendant's burden to show prejudice does not arise until a plaintiff has met the threshold requirement of showing "good cause" for excusing their delay. *Martino v. Bell,* 40 F. Supp. 2d 719, 720 (D. Md. 1999) (citation omitted).

either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. § 1985(3). It is well-established that to prove a conspiracy under § 1985, a plaintiff must establish (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. *Simmons v. Poe,* 47 F.3d 1370, 1376 (4th Cir. 1995). Moreover, to state a claim for relief under § 1985, the plaintiff must "show an agreement or a 'meeting of the minds' by defendants to violate the claimant's constitutional rights." *Id*. at 1377. The Fourth Circuit has noted that "we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Id*.

In the Second Amended Complaint, Plaintiff alleges that the Individual Defendants conspired to violate his constitutional rights by engaging in instances of harassment and discrimination. However, Plaintiff fails to allege specific facts showing that the Individual Defendants reached an agreement or meeting of the minds with respect to the violation of Latif's constitutional rights:

> From at least September 2004 through March 2005, the individual Defendants conspired for the purpose of depriving Mr. Latif of equal protection of the laws by stealing emails from his personal computer, encouraging Kerry Holten to file a sexual harassment claim against him, by attempting to sell him a gun on campus and by getting him to come to a meeting where they tried to force Mr. Latif to resign and committed assault, battery, false imprisonment and intentional infliction of emotional distress.

(Sec. Am. Compl. ¶ 103; *see also id*. at ¶ 62 (alleging that the Individual Defendants "agree[d] to

coerce students to harass Mr. Latif and agree[d] to get an individual to attempt to sell Mr. Latif a gun on campus. . . .").) This Court has consistently dismissed conspiracy claims brought under § 1985 claims where the plaintiff, as here, merely alleges various instances of discrimination and then, in conclusory fashion, states that a conspiracy existed to violate their constitutional rights. *See, e.g.*, *Hoffman v. Baltimore Police Dept.*, 379 F. Supp. 2d 778, 796 (D. Md. 2005); *Hejirika v. Maryland Div. of Correction*, 264 F. Supp. 2d 341, 347 (D. Md. 2003); *Talley v. Farrell*, 156 F. Supp. 2d 534, 546 (D. Md. 2001). Accordingly, this Court concludes that Plaintiff has failed to allege sufficient facts to support his contention that the Individual Defendants conspired to violate his constitutional rights pursuant to § 1985 and Defendants' Motion to Dismiss is GRANTED with respect to Count Six of the Second Amended Complaint.[13]

## **CONCLUSION**

For the reasons set forth above, Defendants' Motion to Dismiss is GRANTED-IN-PART and DENIED-IN-PART. As a result, only the following causes of action will proceed to the next stage of this litigation: Plaintiff's Title VII claims against CCBC (Counts One and Two); Plaintiff's § 1981 claims for injunctive relief against the Individual Defendants in their official capacities (Counts One and Two); and Plaintiff's §§ 1981 and 1983 claims for monetary relief against the Individual Defendants in their individual capacities (Counts One and Two). A separate Order follows.

---

[13] In the alternative, the Individual Defendants argue Latif's conspiracy claim fails under the "intracorporate conspiracy doctrine" in that all of the Individual Defendants are agents of the same entity. Although the Fourth Circuit has upheld the application of the doctrine in the civil rights context, *see Buschi v. Kirven*, 775 F.2d 1240, 1252-54 (4th Cir. 1985), this Court need not address this matter because Latif fails to state a claim for conspiracy.

Dated: December 12, 2006           /s/
                                   Richard D. Bennett
                                   United States District Judge